Fremont-Smith, Thayer, J.
The three plaintiffs in this case allege sexual abuse by Stigmatine priests and a conspiracy by the other defendants including the Stigmatine Order itself, to cover up the activities of the pedophile priests who were involved. Plaintiff Moe alleges that he was sexually abused by a Stigmatine priest, Father Richard J. Ahem, at a summer camp in 1969, when he was 14 years old. Koe alleges that he was abused by Ahern in 1962, when he was eleven years old. Vellante alleges that he was abused by another Stigmatic priest, Father Leo P. Landry, in 1958 when he was 13-14 years old. Two of the priests alleged to have been involved are now dead and the other cannot be located.
The earliest evidence in the record as to the Stigmatine Order’s awareness of the pedophile activities of any of the priests alleged to have abused any of the plaintiffs, is in 1979, when incidents of wrongful behavior regarding Ahem were brought to the Order’s attention. Any conspiracy to cover up the activities of these priests after 1979, when the Order became aware of them, however, could not possibly be found to have affected the abuse of these youngsters in 1958, 1962 and 1969 respectively.
Plaintiff points to a letter from one “Peter Poe,” who is no longer a plaintiff, regarding his being abused by *126 Landiy and by other priests who are not defendants, at the Stigmatine seminary in 1959-1960, and that one of his abusers, Leo Riley (not a defendant) was a prefect at the seminary when Poe was there. This letter is unverified, is hearsay, and, even if admissible, would provide no evidence of the Order’s awareness of any pedophilia acts by the priests involved in this case.
There is thus no reasonable expectation of plaintiffs’ being able to prove an essential element of their case (the Stigmatine Order’s knowledge of any wrongdoing of the priests involved in their alleged abuse between 1958 and 1969). See Flesner v. Technical Communications Corp., 410 Mass 805, 809 (1991).
There is no question but that the hierarchy of the Catholic Church has in the past been derelict in its failure to protect innocent youngsters from pedophil-iac priests who grievously betrayed their trust, and that, as a result, no church institution can any longer be above suspicion. But suspicion is not proof and proof is simply lacking here.
As my rulings in this regard are dispositive of the entire case, the Court need not consider defendants’ additional defenses that they are shielded from liability by the pre-1971 doctrine of immunity[1] and that plaintiffs’ claims should also be barred by the three-year statute of limitations.

ORDER

For these and the other reasons stated in defendants’ memoranda in support and by defendants’ counsel at oral argument (as to which a stenographic record was made), the Court ALLOWS defendants’ motions for summaiy judgment as to each of the plaintiffs and ORDERS that final judgment shall be entered for the defendants.
Defendant’s motion to strike portions of plaintiffs’ appendix as hearsay is ALLOWED.

 The 1971 statute, G.L.c. 231, abolished the previous doctrine of complete immunity for charitable institutions. The 1971 amendment of c. 231 by §85K, abolished complete immunity, but this amendment has been held to be not retroactive so as to apply to previous wrongful acts, as to which total immunity continues to apply. See Higgins v. Emerson Hospital, 367 Mass. 714, 715, 716 (1975), Johnson v. Wesson Women's Hospital, 367 Mass. 717, 718 (1975) (charitable immunity statute, effective September 16, 1971, is not retrospective).